ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF AIKEN ) | FOR THE SECOND JUDICIAL CIRCUIT |
| ) | |
| JACK ROBERTS, INDIVIDUALLY and ) | C/A No.: 2021-CP-02-_____ |
| AS POWER-OF-ATTORNEY for ) | |
| BARBARA ROBERTS, and FRANK ) | |
| ROBERTS, INDIVIDUALLY, ) | |
| ) | **SUMMONS** |
| Plaintiffs, ) | |
| ) | Jury Trial Demanded |
| vs. ) | |
| ) | |
| COUNTY OF AIKEN, AIKEN ) | |
| COUNTY SHERIFF'S OFFICE, AIKEN ) | |
| COUNTY EMERGENCY MEDICAL ) | |
| SERVICES, MICHAEL E. HUNT, ) | |
| INDIVIDUALLY and IN HIS ) | |
| OFFICIAL CAPACITY AS AIKEN ) | |
| COUNTY SHERIFF, CLAY KILLIAN, ) | |
| INDIVIDUALLY and IN HIS ) | |
| OFFICIAL CAPACITY AS AIKEN ) | |
| COUNTY ADMINISTRATOR, ) | |
| JEANNIE TURNER, INDIVIDUALLY ) | |
| and IN HER OFFICAL CAPACITY AS ) | |
| 911 DISPATCHER FOR AIKEN ) | |
| COUNTY,-and JOHN DOES, ) | |
| ) | |
| Defendants. ) | |
| ) | |

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served upon you, and to serve a copy of your Answer to said Complaint on the subscriber, Marion Chace Hawk, at his office at 338 Telfair Street, Augusta, Georgia 30901, within thirty (30) days after the service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

This the 6th day of May, 2021.

1

s/ M. Chace Hawk
Marion Chace Hawk, SC Bar No. 102046
HAWK LAW GROUP
338 Telfair Street
Augusta, Georgia 30901
P: 706-722-3500
F: 866-295-0234

*Attorney for Plaintiffs*

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

STATE OF SOUTH CAROLINA )

COUNTY OF AIKEN )

JACK ROBERTS AS POWER-OF- )
ATTORNEY for BARBARA )
ROBERTS, and FRANK ROBERTS, )
INDIVIDUALLY, )

           Plaintiffs, )
vs. )

 )
COUNTY OF AIKEN, AIKEN )
COUNTY SHERIFF'S OFFICE, AIKEN )
COUNTY EMERGENCY MEDICAL )
SERVICES, MICHAEL E. HUNT, )
INDIVIDUALLY and IN HIS )
OFFICIAL CAPACITY AS AIKEN )
COUNTY SHERIFF, CLAY KILLIAN, )
IDIVIDUALY and IN HIS OFFICIAL )
CAPACITY AS AIKEN COUNTY )
ADMINISTRATOR, JEANNIE )
TURNER, INDIVIDUALLY and IN )
HER OFFICAL CAPACITY AS 911 )
DISPATCHER FOR AIKEN COUNTY, )
and JOHN DOES, )

 )
           Defendants. )

 )

IN THE COURT OF COMMON PLEAS

FOR THE SECOND JUDICIAL CIRCUIT

C/A No.: 2021-CP-02-_____

**COMPLAINT FOR DAMAGES**

Jury Trial Demanded

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

    COME NOW Plaintiffs Jack Roberts as Power-of-Attorney for Barbara Roberts, and Frank

Roberts, Individually, and file this Complaint for Damages against Defendants County of Aiken;

Aiken County Sheriff's Office; Aiken County Emergency Medical Services; Michael E. Hunt,

Individually and in his Office Capacity as Aiken County Sheriff; Clay Killian, individually and in

his Official Capacity as Aiken County Administrator; Jeannie Turner, Individually and in her

Official Capacity as 911 Dispatcher for Aiken County; and John Does and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Barbara Roberts ("Mrs. Roberts") is and was a citizen of Aiken County and was residing at 925 Windsor Road in Windsor, South Carolina. On May 6, 2019, Mrs. Roberts required emergency medical services (EMS) due to suspected cardiac arrest.

2.      Plaintiff Jack Roberts is the son and Power-of-Attorney for Barbara Roberts. Plaintiff Jack Roberts is a citizen and resident of Cobb County, in Marietta Georgia As Power-of-Attorney, Plaintiff Jack Roberts brings claims on behalf of his mother, Mrs. Roberts.

3.      Plaintiff Frank Roberts also is the son of Barbara Roberts and is a citizen and resident of Aiken County, South Carolina.

4.      Whenever the term "Plaintiffs" is utilized in this Complaint, such term collectively refers to and includes all named Plaintiffs in this lawsuit, unless specifically restricted within a cause of action or as further defined below.

5.      Defendant County of Aiken ("County") is a governmental entity and political subdivision organized and existing under the laws of the State of South Carolina.

6.      Upon information and belief, Defendant Aiken County Sheriff's Office ("ACSO") is a political subdivision and law enforcement agency that is created and operated by the County and is headquartered in Aiken County, South Carolina.  Defendant ACSO also establishes, operates, oversees, maintains, manages, and/or controls the County's 911 dispatch operation or division ("911 Dispatch"), including but not limited to the supervision, hiring, assignment, screening, training, and/or retention of its Sheriff, deputies, and 911 dispatchers, including Jeannie Turner. At all material times, ACSO, including 911 Dispatch, consisted of persons who were employees, agents, officers, directors, supervisors, and/or servants acting under color of state law and the course and scope of their employment.

4

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

7.    Upon information and belief, at all material times, Defendant Michael E. Hunt ("Hunt") is the duly elected Sheriff of Aiken County. As such, Hunt operates, oversees, maintains, manages, and/or controls the ACSO and 911 Dispatch, including but not limited to the supervision, hiring, assignment, screening, training, and/or retention of deputies and 911 dispatchers and the establishment, development, implementation, and/or enforcement of appropriate operational, safety, training, staffing, and fundamental policies, procedures, and practices utilized by 911 Dispatch. That authority and control over the day-to-day operations of the communications division also known as 911 Dispatch is delegated to Defendant Hunt by Aiken County, South Carolina Code of Ordinances Sec. 20-23.

8.    Upon information and belief, Defendant Aiken County Emergency Medical Services ("Aiken EMS") is a political subdivision that is created and operated by the County and is headquartered in Aiken County, South Carolina. Aiken EMS provides pre-hospital medical care and EMS services to the citizens of Aiken County, including a fleet of ambulances and rescue vehicles and full-time and part-time staff. At all material times, Aiken EMS consisted of persons who were employees, agents, officers, directors, supervisors, and/or servants acting under color of state law and the course and scope of their employment.

9.    Upon information and belief, at all material times, Defendant Clay Killian ("Killian") as County Administrator of Aiken County. As such, Killian is the chief administrative officer of the County and directs, operates, oversees, maintains, manages, administers, and/or controls all county departments and officials, including Aiken EMS. Killian is also responsible for implementation of policies, procedures and regulations adopted by the County and compliance of said policies. Killian further prepares and recommends the annual operating budget and like programs to the County and supervises the implementation of its budget.

5

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

10.    Upon information and belief, at all material times, Defendant Jeannie Turner ("Turner") is a 911 dispatcher for the ACSO and 911 Dispatch. As explained herein, Defendant Turner received the initial 911 call from Frank Roberts regarding Mrs. Roberts' medical emergency. As such, Defendant Turner has the authority and responsibility over her dispatch communication or failure thereof resulting in Mrs. Roberts' injuries and damages.

11.    Defendants Hunt, Killian and Turner are sued herein in their official and in their individual capacities.

12.    Plaintiffs intend to name as defendants any other person or entity that, either directly or by joining or in concert with others was negligent and breached their duty of reasonable care or the applicable standard of care in assessing, diagnosing, caring for, and treating Mrs. Roberts and was responsible for the actions or inactions that caused Mrs. Roberts' injuries and damages. Defendants John Does are unknown or unidentified persons or entities within the network of individuals and businesses which participated in these acts and omissions.

13.    Whenever the term "Defendants" is utilized within this Complaint, such term collectively refers to and includes all named Defendants in this lawsuit unless specifically restricted within a cause of action or as further defined below.

14.    At all material times, Defendants were responsible for ensuring that the operations of Aiken EMS and 911 Dispatch, complied with all applicable state, federal, and local statutes, laws, regulations, and ordinances.

15.    At all material times, Defendants charged and were paid for services rendered to Mrs. Roberts.

16.    Whenever in this Complaint it is alleged that the Defendants did any act or failed to do any act, it is meant that the officers, agents, or employees of the Defendants respectively

6

performed, participated in, or failed to perform such acts while in the course and scope of their employment or agency relationship with said Defendants.

17.     This action is brought pursuant to the South Carolina Tort Claims Act and pursuant to all other applicable law.

18.     Defendants are joint tortfeasors and were all jointly, directly, and vicariously liable for the care and treatment Mrs. Roberts received and damages sustained by Mrs. Roberts.

19.     Jurisdiction and venue are proper in Aiken County.

## GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

### *Aiken County's Emergency Medical Services*

20.     By law, the County has established and maintains a department of emergency medical services or Aiken EMS. Ch. 11, Art. III, Sec. 11-26 of the Aiken County Code of Ordinances. Aiken EMS is managed by its director who coordinates his or her activities with the County Administrator and the ACSO.

21.     Within the County, Aiken EMS responds to 19,000 calls per year on average.

22.     From 2009 to 2019, the population of the County grew by 6.7 percent making the County the 6th largest in South Carolina.

23.     Defendants were aware or should have been aware of the County's increase in population and their corresponding need to increase the number of staff, employees, agents, and/or servants, including 911 dispatchers and Aiken EMS personnel, to adequately serve their citizens and residents.

24.     At all relevant times, Defendants represented to the public, including Barbara Roberts and Plaintiffs, that they were and are capable to provide **on-demand, high quality pre-hospital medical care** to the County. Defendants also represented that calls for emergency

7

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

medical services would be and are answered 24 hours a day by adequate and properly trained telecommunicators or 911 dispatchers. Defendants further represented that it operated and operates a fleet of ambulances and rescue vehicles to provide **the best care** possible using a **staff of dedicated and certified full-time and part-time employees**, including adequate and available emergency ambulances strategically stationed in the County.

25.    The citizens and residents of the County expect and rely upon Aiken EMS and the ACSO, through its 911 Dispatch, to provide on-demand emergency medical services, including the utilization of adequate, sufficient, and trained certified staff, personnel, employees, agents, and/or servants.

26.    Despite substantial growth in the County over the last decade and Defendants' notice and knowledge of the need for increased numbers of qualified, competent and trained staff, personnel, employees, agents, and/or servants, Aiken EMS and 911 Dispatch remained chronically underfunded, understaffed, and undertrained since 2006 and have failed to meet the most basics service standards.

27.    In 2016, the County performed an internal audit which revealed that the County experienced a nearly 20 percent turnover rate for employees in the prior year, a negative retention rate considerably higher than the national average. The County's audit also determined that its low pay or wages was the primary factor.

28.    Despite notice and knowledge high employee turnover, insufficient resources, and inadequate 911 dispatchers and EMS personnel, Defendants failed and refused to address the problem, only increasing wages or pay once from 2016 to 2019 for 911 Dispatch and Aiken EMS personnel, and even with a small increase in pay, Defendants' wages remained below the national

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

8

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

and state averages and below the average of surrounding counties for EMS staff and personnel and 911 dispatchers.

29.     During this time period, Defendants developed, implemented, or acquiesced customs, policies, and practices that refused to hire qualified candidates for Aiken EMS and 911 Dispatch, if that candidate had previously left a position at the County.

30.     Due to their limited number of 911 dispatchers, Defendants developed, implemented, or acquiesced customs, policies, and practices that allowed undertrained and uncertified 911 dispatchers to continue to work in 911 dispatch.

31.     Due to their limited number of EMS staff and personnel, including available ambulances, Defendants developed, implemented, or acquiesced to customs, policies, and practices that encouraged 911 dispatchers to downgrade calls for serious medical conditions to less serious medical conditions in order to limit the number of ambulances required to be dispatched to the applicable scene.

32.     In 2018 and 2019, for a significant period of time, Aiken EMS also operated with no official administrators, directors, or supervisors.

33.     Defendants' customs, policies, and practices were in direct violation of applicable laws, statutes, regulations, ordinance as well as the basic industry standards for county administrators, county sheriffs, EMS service providers and 911 dispatchers.

34.     Defendants had actual knowledge of the customs, policies, and practices alleged in paragraphs 29, 30 and 31

35.     That is was foreseeable to a reasonable person that the customs, policies, and practices would create substantial risk to the public, including Mrs. Roberts and Plaintiffs.

9

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

36.     Pursuant to the Emergency Medical Services Act of South Carolina, S.C. Code Ann. § 44-61-10 *et seq*., South Carolina's Department of Health and Environmental Control (DHEC) develops standards and promulgates regulations applicable to EMS services, including but not limited to: regulation, licensing and permitting of Aiken EMS; training and certification of EMS personnel; development, adoption, and implementation of EMS standards; development and coordination of EMS communications systems; and the establishment of other patient care requirements.

37.     Under S.C. Code Ann. § 44-61-40, "[a] person[,] county, district, municipality, or metropolitan government or agency . . . may not furnish, operate, conduct, maintain, advertise, or otherwise engage in or profess to engage in the business or service of providing emergency medical response or ambulance service, or both, without obtaining a license and ambulance permit issued by" DHEC.

38.     S.C. Code Ann. § 44-61-50 provides that Defendants' ambulances must not be operated unless licensed and ambulances must meet all requirements as to vehicle design, construction, staffing, and medical and communication equipment and supplies as set forth by DHEC. *Id.*

39.     S.C. Code Ann. § 44-61-80 also provides that Defendants' emergency medical technicians (EMTs) must obtain a valid emergency technician certificate, must pass the National Registry of EMTs examination, and must meet other background requirements.

40.     Further, S.C. Code Ann. § 44-61-120 requires that Defendants ensure delivery of adequate emergency medical services to every citizen, including guidelines for EMTs at all levels for the administration of epinephrine to a person suffering or believed to be suffering from anaphylaxis.

10

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

41.    South Carolina Criminal Justice Academy (SCCJA) regulations also provide training requirements relating to the County's E-911 system.

42.    S.C. Code Reg. §§ 37-062 and 37-066 imposes a duty on Defendants to ensure all candidates for certification as 911 dispatcher be E911 certified and complete their training through SCCJA within one (1) year of hire. Candidates for certification as operators must also successfully complete a prescribed course of training before being certified as Class 4-TCO. *Id.*

43.    As early as 2012, ACSO advertised that all 911 dispatch candidates "must successfully complete required training and maintain E-911 and NCIC certifications."

44.    With notice and knowledge of said training and certification requirements, Defendants developed, implemented, or acquiesced to a custom, practice, policy and/or procedure of not sending newly hired 911 dispatchers to the statutorily required SCCJA E-911 training and allowing the dispatchers to work without the proper credentials.

45.    As of June 2020, only six (6) ACSO 911 dispatchers in the last ten (10) years had been through and received a certification for the required SCCJA E-911 training.

46.    Industry standard requires 911 dispatchers to complete Emergency Medical Dispatch (hereinafter "EMD") training, which puts new dispatchers through a series of trainings and tests that help the dispatcher to ask appropriate questions and recognize symptoms to properly identify medical conditions and properly dispatch 911 calls and EMS personnel.

47.    Upon information and belief, Defendants have never had and do not use an EMD system or require their 911 dispatchers to be EMD certified.

48.    Between 2016 and 2019, Defendants had established a custom, practice, policy or procedure to shutdown up to five (5) of their ten (10) EMS Stations at a time due to understaffing or funding issues.

11

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

49.    Between 2012 and 2020, Defendants knew or should have known that their custom, practice, policy or procedure of shutting down stations had resulted in longer response times and, thus, significantly increased the risk of harm to the public.

50.    As of 2019, the County had among worst retention rate for 911 dispatchers for all counties in South Carolina.

51.    In 2018 and 2019, Defendants knew they needed twenty-five (25) 911 dispatchers to properly serve the County; however, from January of 2019 to June of 2020, Defendants only hired nineteen (19) new dispatchers.

52.    During that time period, eight (8) of the twenty-four (24) 911 dispatchers left their jobs.

53.    Accordingly, in May of 2019, 911 Dispatch and Aiken EMS were understaffed in violation of statute S.C. Code Ann. § 23-47-20(C)(20).

### *Jeannie Turner and 911 Dispatch*

54.    In 2012, Defendant Turner was hired by Defendants to serve as a 911 dispatcher.

55.    At the time of her hire, Turner did not have a E-911 certification from SCCJA, nor did she provide proof a high school diploma or GED equivalent.

56.    While deficient, Defendants did not send Turner to the SCCJA for her required training until 2016.

57.    That between 2012 and 2019 Defendants complete only 4 annual reviews of Turners performance as a dispatcher. only Turner failed key sections of internal competence testing for dispatchers.

58.    In August of 2018, Turner failed to pass the required SCCJA training program for 911 dispatchers scoring only 56% on the Bilateral Task Orientation Training Challenge Test.

12

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

59.    Despite her failure to complete said training, Turner was permitted to continue to work for 911 Dispatch.

60.    Despite Turner's lack of E-911 certification, Defendants failed to take any corrective or intervening action to prevent Turner from continuing to answer and dispatch calls for Aiken 911 Dispatch.

61.    Instead, in 2017, Turner was promoted and began to supervise and train other 911 dispatchers for the County.

62.    In 2019, Defendants knew or should have known that 911 Dispatch and Aiken EMS were underfunded, understaffed, underequipped, and undertrained to properly handle and provide quality pre-hospital and emergency medical care to the County, its citizens, and residents.

63.    In May of 2019, Turner continued to serve as a 911 dispatcher, including interaction with Mrs. Roberts and Plaintiffs.

### *May 9, 2019: Barbara Roberts*

64.    On May 6, 2019, Mrs. Roberts, a 71-year-old woman, suffered a began suffering symptoms of a cardiac arrest and collapsed while at home with her son, Frank Roberts, and his wife, Brenda Roberts.

65.    As a former 911 dispatcher and Aiken EMS worker, Brenda Roberts recognized that Mrs. Roberts was having a heart attack and instructed her husband to call 911 while she performed cardiopulmonary resuscitation (CPR).

66.    As a former 911 dispatcher and Aiken EMS worker, Brenda Roberts also knew that protocol required two (2) units be dispatched to the scene for a cardiac arrest patient because proper patient care mandates more than two (2) EMS personnel to perform all necessary tasks.

13

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

67.    Upon contacting 911 Dispatch, Frank Roberts repeatedly explained to Turner, a 911 dispatcher, that his mother was suffering from a "cardiac arrest."

68.    While Mrs. Roberts condition remained dire, Turner was rude and confrontational and seemed annoyed and frustrated that Frank Roberts was insisting his call be categorized as a cardiac arrest.

69.    Rather than obtain all relevant information, Turner hung up on Frank Roberts within 1 minute and 12 seconds of his call.

70.    After hanging up on Frank Roberts, Defendants' cameras displayed Turner bragging to other dispatchers that "I hung up on him" and proclaiming that "she did not have time for that."

71.    Turner then improperly, intentionally, and with actual malice improperly coded the call as a report of "chest pain."

72.    As a result, only one (1) Aiken EMS unit was sent to the residence, which was inadequate because Mrs. Roberts' condition required two (2) units or at least three (3) EMTs or paramedics. Turner's improper dispatch also resulted in Aiken EMS arriving without vital information, proper equipment, and insufficient resources to properly care for Mrs. Roberts.

73.    Once on the scene, Aiken EMS personnel, Melvin Flippin ("Flippin") did not act urgently and took his time to gather his bag and enter the home. He also failed to bring equipment necessary to treat Mrs. Roberts in her home.

74.    Upon entering the home, Flippin then recognized Mrs. Roberts was in cardiac arrest and was forced to returned to ambulance gather additional equipment to treat Mrs. Roberts. He also radioed for an additional EMS unit to meet him in route to the hospital.

14

75.    Flippin took approximately seventeen (17) minutes to complete industry standard life-saving techniques that should have only taken six (6) to nine (9) minutes to complete. After seventeen (17) minutes elapsed and Flippin administered the proper medication, Mrs. Roberts heart began to beat again, and she began to breath on her own.

76.    To properly treat a person suffering a cardiac arrest with only one paramedic, requires the use of a ventilator.

77.    Flippin chose not to use a ventilator or was not provided one on his ambulance by Aiken County.

78.    Flippin failed to alert the hospital of an incoming ST-Elevation Myocardial Infarction. This is a breach of protocol and basic industry practice. This failure caused a delay of the cardiac catherization team mobilization process.

79.    As a result of the delay caused by the negligence, gross negligence, intentional, malicious, willful, wanton, and reckless conduct of Defendants, Frank Roberts and Mrs. Roberts suffered severe injuries and harm, including but not limited to an anoxic brain injury.

## **FIRST CAUSE OF ACTION**

### **(Negligence/Gross Negligence/Recklessness)**

80.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 79 as if fully set forth *verbatim*.

81.    This cause of action asserts claims of ordinary negligence. The acts or omissions complained of herein may be assessed by the trier of fact on the basis of common, everyday experiences and the common knowledge of a lay person. The acts or omissions complained of here do not implicate questions of professional judgment or medical competence, nor do they

15

involve matters of medical science or art requiring specialized knowledge, training, or skills not possessed by lay persons. Moreover, the acts or omissions complained of herein involve administrative or custodial neglect perpetrated by persons who were not medical professionals and/or the acts and omissions complained of herein resulted from the dangerous operational, administrative, and managerial policies, systems, directives, and/or practices engaged in by Defendants, which affected Mrs. Roberts.[1]

82.     Defendants, individually and collectively, and by virtue of their own independent actions and while acting as agents, servants and/or employees of one another, and while acting through the healthcare providers and other personnel or staff employed or utilized by them, failed to exercise ordinary and reasonable care in provision of services for Mrs. Roberts. Defendants' intentional, malicious, reckless, and grossly negligent conduct included, but was not limited to:

> a. Failure to provide proper care and services in accordance with Mrs. Roberts' rights and needs;
>
> b. Failure to provide necessary and basic services to Mrs. Roberts in order to prevent the worsening of her cardiac event;
>
> c. Failure to establish, implement, enforce and/or follow appropriate operational, safety, training, staffing, administrative and fundamental policies, procedures, practices, and protocols in keeping with standard industry practices for 911 dispatch and EMS workers to prevent harm to the public, including Mrs. Roberts, and avoid the known consequences of her inadequate care;

---

[1] To the extent an affidavit pursuant to S.C. Code § 15-36-100 is required or if any of the acts or omissions complained of in the Complaint are deemed by the Court to involve professional negligence by the Defendants rather than ordinary negligence, Plaintiffs have attached as Exhibit A to this Complaint the affidavit of Brenda Roberts, who is qualified as an expert on the issues raised in this Complaint. This affidavit specifies at least one negligent act or omission on the part of Defendants and the factual basis for each claim based upon the available evidence at the time of the filing of the affidavit. The attached affidavit is not inclusive of each act, error, or omission that has been committed, or may not have been committed by the Defendants, and Plaintiffs reserve the right to contend and prove additional acts, errors, and omissions on the part of the Defendants that reflect a departure from the requisite standard of care required by law.

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

d. Failure to have systems in place to ensure proper and complete communication between emergency services staff, including 911 Dispatch and Aiken EMS, regarding critical information that affected Mrs. Roberts' health and safety;

e. Failure to provide sufficient numbers of staff to meet Mrs. Roberts' fundamental needs for care and services;

f. Failure to hire, adequately screen, and train adequate and appropriate personnel monitor, communicate, supervise, serve, care for and/or treat Mrs. Roberts;

g. Retention and assignment of unfit, unqualified and incompetent personnel or staff to monitor, communicate with, supervise, serve, care for, and/or treat Mrs. Roberts;

h. Failure to have systems in place to ensure that that the staff or personnel functioned within the scope of their professional practice, education, training in keeping with standard industry practices for 911 dispatch and EMS workers to meet the needs of patients including Mrs. Roberts;

i. Failure of Turner and 911 Dispatch to remain on the phone to gather vital medical data;

j. Failure of Turner and 911 Dispatch to relay vital medical data to Aiken EMS workers;

k. Turner's malicious and intentional downgrading of Frank Roberts' 911 call and reporting of cardiac arrest as one for "chest pain";

l. Allowing Turner to continue to serve as a 911 dispatcher for the County with notice and knowledge of her inadequate training and credentials and inability to perform job requirements;

m. The development, implementation, or acquiescence of improper customs, practices, policies, procedures, or protocols, including downgrading serious calls for cardiac arrest to less serious medical conditions to limit the number of Aiken EMS units dispatched to the scene;

n. Failure to follow the basic procedures for dispatching a call for a report of cardiac arrest in violation of state laws and regulations,

county ordinances, policies, procedures, and the basic industry standard protocols and practices for 911 dispatchers;

o. Failure to establish consistent policies and procedures, effective training, and meaningful supervision to appropriately guide and monitor the actions of 911 dispatchers and other agents of Defendant engaged in county related activities;

p. Failure to establish reliable systems to detect and appropriately discipline and hold accountable officers for misconduct;

q. Failure to prioritizing revenue generation;

r. All of these failures affirmative acts and omissions of the defendant were committed at the expense of the rights of the plaintiff, public safety and Aiken County citizens.

83.     The conduct of all Defendants not only breached their duty of ordinary or reasonable care but were reckless, willful, and wanton, and demonstrated a conscious failure to exercise due care and conscious indifference to and/or reckless disregard to the rights and safety, health, and welfare of Mrs. Roberts.

84.     In addition to being malicious, negligent, grossly negligent, reckless, and breaching the duty of ordinary or reasonable of care and basic standards industry practices for 911 dispatch and EMS workers, the conduct of Defendants violated provisions of applicable federal, state, and local laws, statutes, regulations, ordinances but not limited to: provisions of the Emergency Medical Services Act of South Carolina (S.C. Code Ann. § 44-61-10 *et seq*.); provisions of the South Carolina Criminal Justice Academy's Regulations (S.C. Code Reg. 37-001, *et seq*.), constituting negligence *per se*.

85.     As a direct and proximate result of the intentional and grossly negligent acts omissions and violations of reasonable of care by Defendants as described above, Plaintiffs suffered severe injuries and damages, including but not limited to: additional and prolonged

18

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

hospitalization and skilled nursing and rehabilitation care; physical and mental pain and suffering; scarring; mental anguish and emotional distress; discomfort and decline as a result of her injuries; loss of enjoyment of life; insults to her human dignity; and other economic and non-economic damages.

86.    Defendants are liable to Plaintiffs for medical expenses, physical and mental pain and suffering, and other damages.

## SECOND CAUSE OF ACTION

### (Intentional Infliction Emotional Distress)

87.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 81 as if fully set forth *verbatim*.

88.    In addition to the negligent, grossly negligent, intentional, malicious, willful, wanton, and reckless conduct of Defendants previously described herein, Defendants by virtue of their own independent actions, and while acting through their agents (actual or apparent), servants and/or employees engaged in intentional infliction of emotional distress, which proximately caused Mrs. Roberts' injuries and damages.

89.    Defendants, including Turner, engaged in intentional and reckless conduct that was certain or substantially certain to result in distress, including but not limited to:

> a. Rude and confrontational communication;
>
> b. Hanging up on Frank Roberts;
>
> c. Failing and refusing to procure vital health information relating to Mrs. Roberts' condition;
>
> d. Intentionally and maliciously downgrading Frank Roberts' complaints relating to Mrs. Roberts as chest pain rather than cardiac arrest;

19

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

e. Failing to ensure proper and adequate Aiken EMS units were dispatched to the scene to provide appropriate emergency care;

f. Failing to follow the basic protocols and requirements of

90.    The acts and omission of Defendants described herein were extreme and outrageous as to exceed all possible bounds of decency. Defendants' acts and omissions also were atrocious and utterly intolerable.

91.    Defendants knew or should have known that their conduct would have resulted in severe emotional distress.

92.    As a direct and proximate result, Plaintiffs suffered extreme emotional distress and that emotional distress was so severe that no reasonable person could be expected to endure it.

## FOR A THIRD CAUSE OF ACTION

### (STATE CLAIMS FOR PERSONAL INJURY DUE TO THE GROSS NEGLIGENCE, NEGLIGENCE, NEGLIGENCE PER SE, AS WELL AS MALICIOUS, INTENTIONAL, WILFUL AND WANTON CONDUCT OF THE DEFENDANTS)

93.    That the Plaintiff's hereby incorporate paragraphs 1 through 92 of the above complaint by reference including all statements and allegations of the statutory duties owed by the Defendants to the Plaintiffs.

94.    That the Defendant Turner is sued in her official capacity as a 911 Dispatcher for Aiken County as well as in her individual capacity for her outrageous intentional, malicious, willful, wanton, reckless, and grossly negligent conduct including:

a. Her failure to stay on the phone to gather vital medical data;

b. Her failure to relay vital medical data to EMS workers:

c. Her failure conduct herself with a basic level of kindness, concern or professionalism during the 911call with Frank Roberts.;

20

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

d. Her continuing to work as a 911 dispatcher for Aiken County knowing that she did not have the proper training, credentials or ability to perform the job.

e. Her continuance and use of the custom, developed and encourage by Aiken County and Aiken County Sheriff's office, of downgrading serious calls for cardiac arrest to less serious medical conditions to limit the number of EMS units required to be dispatched to the scene.

f. Her malicious and intentional downgrading of Frank Roberts 911 call for cardiac arrest as one for "chest pain."

g. For her failure to follow the basic proper procedures for dispatching a call for a report of cardiac arrest in violation of state laws, state regulations, county ordinances, policies, procedures, and the basic industry standard protocols and practices for 911 dispatchers.

95.    That the Defendant Turner knew or should have known that Aiken County custom and practice of downgrading calls reporting a cardiac arrest to a report for chest pain and sending only one unit would likely result in a substantial increase in the risk of harm to the Plaintiff.

96.    That as a result of Defendant Turner's malicious conduct and her use of the Aiken County customs and policies the Plaintiffs suffered severe injuries, pain and suffering, economic damages and extreme emotional distress.

97.    That the proximate cause of the Plaintiffs injuries were the acts and omissions of conduct of the Defendant Turner.

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

## FOR A FOURTH CAUSE OF ACTION

## (Violation of State Civil Rights by Aiken County, Aiken County Sheriff's Office, Aiken EMS, and Killian)

98.     That each and every allegation of fact alleged in paragraphs 1 through 97 are restated and re-alleged herein as if verbatim.

99.     That Article 1, Section 23 of the South Carolina Constitution states that the rights of citizens granted in Article 1, Section 23 of the South Carolina Constitution states that the rights of citizens granted in Article 1 "shall betaken deemed and construed to be mandatory and prohibitory..."

100.    That the Defendants, Aiken County, Aiken County Sheriff's Office, Aiken EMS, and Killian and its officers, agents and employees   deprived the Plaintiff of civil rights guaranteed by the South Carolina Constitution in the following ways:

> a.  By denying the Plaintiff Due Process of law granted and secured by Article 1, Section 3 of the South Carolina Constitution; and
>
> b.  In other ways to be proven at trial.

101.    That, as direct and proximate result of the negligent, grossly negligent, willful, wonton actions and omissions of the Defendant Turner, Aiken County, Aiken County Sheriff's Office, Aiken EMS, and Killian COUNTY through its officers, agents and employees, the Plaintiff suffered and will continue to suffer damages, including but not limited to: loss of liberty, loss of job, attorney fees, and legal costs. Shame, shock, humiliation, degradation and inhumane treatment, medical expenses.

22

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

## FOR A FIFTH CAUSE OF ACTION

## STATE LAW CLAIMS AGAINST DEFENDANT'S AIKEN COUNTY, AIKEN COUNTY SHERIFF'S OFFICE, HUNT, CLAY KILLIAN AND AIKEN EMS FOR GROSSLY NEGLIGENT SUPERVISION, RETENTION, TRAINING, STATE CREATED DANGER AND FAILURE TO INVERVENE

102.     That the Plaintiff's hereby incorporate paragraphs 1through 101 of the above complaint by reference including all statements and allegations of the statutory duties owed by the Defendants to the Plaintiffs.

103.     Defendants Clay Killian and Hunt are sued here in their individual and official capacities.

104.     That all reckless and intentional conduct of Defendant Turner listed in paragraph 94 were committed with either the constructive or actual knowledge of Aiken County, Hunt, Aiken EMS and Aiken County Sheriff's Office and Clay Killian.

105.     The plaintiff alleges that the Defendant's Aiken County, Aiken County Sheriff's Office, Hunt in his official capacity, and Aiken EMS failed to meet in their duty to the Plaintiff for the following malicious, reckless and or grossly negligent acts or omissions:

   a. Failure to reasonably supervise Defendant Turner and Flippin in a manner consistent with state laws, state regulations, county ordinances, policies, procedures and the basis industry standards for 911 dispatchers and EMS workers.

   b. Failure to complete the ministerial duty of sending Defendant Turner for the proper training consistent with state laws, state regulations, county ordinances, policies, procedures and the basis industry standards for 911 dispatchers and EMS workers.

23

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

c.  Failure to intervene and take corrective action or fire the Defendant Turner for failure to complete the required training for 911 dispatchers.

d.  Failure to properly train Defendant Turner and Flippin reasonably and in a manner consistent with state laws, state regulations, county ordinances, policies, procedures and the basis industry standards for 911 dispatchers and EMS workers.

e.  Failure to properly manage and adequately staff the 911 dispatch communications division in a manner consistent with state laws, state regulations, Aiken county ordinances, policies, procedures and the basis industry standards for County administrators, County Sheriff's Offices, 911 dispatch services and Emergency Medical Service providers.

f.  For developing and implementing or acquiesce to the use of the policy or custom of downgrading calls with reports of cardiac arrest as reports of "chest pain" to cut down on the number of ambulance units dispatched to the scene.

g.  Failure to properly intervene to stop the policy or custom of downgrading calls with reports of cardiac arrest as reports of "chest pain" to cut down on the number of ambulance units dispatched to the scene.

h.  For developing and implementing or acquiesce to the use of the policy or custom of not sending newly hired 911 dispatchers to the statutorily required SCCJA E-911 training and allowing uncertified dispatchers to dispatch calls without the proper training.

i.  Failure to intervene and to stop the Aiken County custom of not sending newly hired 911 dispatchers to the statutorily required SCCJA E-911 training and allowing uncertified dispatchers to dispatch calls without the proper training.

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

j.  Failure to manage the Communications Division and the Aiken County EMS in a manner that improved retention from 2012 to 2019 and in a manner consistent with state laws, state regulations, Aiken county ordinances, policies, procedures and the basis industry standards for County administrators, County Sheriff's Offices, 911 dispatch services and Emergency Medical Service providers.

k.  Failure to increase salaries of EMS worker and 911 dispatchers in spite of the knowledge that both divisions were understaffed, and that understaffing would result in an increased risk of harm to the public.

l.  For developing and implementing or acquiesce to the use of the policy or custom of refusing to hire qualified applicants for EMS and 911 dispatch position if that same applicant recently left their job with Aiken County.

m.  Failure to hire qualified candidates due solely to a spiteful policy aimed at punishing ex-employee's for leaving positions with Aiken County and to compete with other 911 dispatch services and EMS service providers. This was done knowing that understaffing would result in an increased risk to the public.

n.  Failure to properly intervene to stop the policy or custom of not rehiring qualified candidates for EMS and 911 dispatch positions if the candidate was a former Aiken County EMS worker or 911dispatcher who left Aiken County to work for a competing county or private service provider.

o.  Failure to provide the adequate equipment for Emergency Medical Services personnel.

25

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

    p.   Failure to hold, conduct and record Communications Center Board meetings in a manner consistent with state laws, state regulations, county ordinances, policies, procedures and the basis industry standards for County Officials and Governments.

    q.   Failure to appoint an EMS Director.

    r.   Failure to appoint an EMS Training Director with the proper training and credentials to train EMS staff.

    s.   Failure of the EMS crew to remain on scene and stabilize Mrs. Roberts until a second unit arrived.

    t.   Failure to timely administer Epinephrine to Barbara Roberts in a manner consistent with industry standards.

    u.   Failure to equip the ambulance with ventilators in a manner consistent with industry standards.

    v.   Failure to timely perform IV/IO access procedures in a manner consistent with industry standards.

106.     That the failures listed in paragraphs 94 and 105 were committed in violation state laws, state regulations, Aiken County ordinances, Aiken County policies, Aiken County procedures as well as the basis industry standards for 911 dispatchers and EMS workers, communications division supervisor for 911 dispatch, EMS supervisors, County Sheriff's Offices, EMS service providers and South Carolina county governments for which the Defendant's Aiken County, Aiken County Sheriff's office, Defendant Turner and Aiken County EMS are jointly liable to Plaintiff's for their injuries and economic damages.

26

107.    That the Defendants had actual knowledge of the acts and omissions listed in paragraphs 94 and 105 and failed to respond with reckless indifference to harm these failures posed to Aiken County citizens.

108.    That that as a result of the Defendants Turner, Hunt, Aiken County, Aiken County Sheriff's Office, Aiken County EMS, and Clay Killians acts and omissions the Plaintiffs Frank Roberts and Barbara Roberts suffered severe emotional and bodily injury, pain and suffering and economic damages.

109.    That the proximate cause of the Plaintiffs injuries were the intentional, malicious, willful, wanton, reckless, and grossly negligent act and omissions of the Defendants Turner, Hunt, Aiken County, Aiken County Sheriff's Office, Aiken County EMS, and Clay Killian.

## FOR A SIXTH CAUSE OF ACTION

### (Federal Claims for Intentional, Reckless and Grossly Negligent Deprivation of the Constitutionally Guaranteed Rights)

110.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 109 as if fully set forth *verbatim*.

111.    By the acts and omissions described above and below, Defendants violated 42 U.S.C. § 1983, depriving the Plaintiffs of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendments to the U.S. Constitution:

   a. The right to be free from deprivation of liberty and injury without substantive due process and from state created danger as secured by the Fourteenth Amendment;

   b. And in such other particulars as may be learned through discovery.

112.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above and below, Plaintiff sustained injuries and damage as otherwise set forth in this complaint.

27

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

113.    The conduct of Defendants in their individual capacities, entitles Plaintiff to punitive damages and penalties allowable under 42 USC § 1983 and the S.C. Code.

114.    Plaintiff is also entitled to reasonable costs and attorney's fees under 42 USC § 1988 and applicable South Carolina codes and laws.

115.    This Court has jurisdiction under 28 U.S.C. § 1367(a) over the claims under South Carolina law because the facts of the federal claims occurred in South Carolina and form part of the same case or controversy under Article III.

116.    Defendants Turner, Killian and Hunt are sued here in both their individual and official capacities.

117.    That the Defendant Turner is sued in her official capacity as a 911 dispatcher for Defendants as well as in individual capacity for her outrageous intentional, malicious, willful, wanton, reckless, and grossly negligent conduct including:

> a. Her failure to stay on the phone to gather vital medical data to relay to Aiken EMS;

> b. Her failure conduct herself with the most basic of level of dignity, respect and professionalism during the 911 call with Frank Roberts;

> c. Her continuing to work as a 911 dispatcher for Defendants with the knowledge that she did not have the proper training, credentials or ability to perform the job;

28

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

d. Her use of the custom, practice, policy, or procedure to downgrade serious calls for cardiac arrest in order to limit the number of Aiken EMS units required to respond; and

e. Her malicious and intentional downgrading of the 911 call for cardiac arrest as one for "chest pain."

118.    That Defendant Turner committed the acts and omissions alleged in Paragraph 117 with the constructive knowledge, actual knowledge, and approval of Defendants Aiken County, ACSO, Aiken EMS, Hunt, and Killian.

119.    That it was foreseeable to any reasonable person that Turner's malicious, willful and reckless acts and omissions as well as the customs and practices of Aiken County that allowed and facilitated them, would substantially increase the risk of the harm to the public and would likely result in the deprivation of Mrs. Roberts' constitutional rights to liberty and bodily integrity.

120.    That the malicious, willful and reckless and negligent acts and omissions of Defendants were the proximate cause of the Plaintiffs' injuries and damages.

121.    That the Defendants individually and in concert developed, acquiesced to and engaged in the following patterns, practices, customs and or polices:

a. Allowing uncertified and undertrained 911 dispatcher to work for Aiken County 911 dispatch;

b. 911 dispatchers downgrading calls for serious medical conditions to reduce the number of units required to respond to an emergency. In this case downgrading reports of a cardiac arrest to reports of chest pain.

29

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

c.  Not requiring 911 dispatchers for Aiken County to recieve statutorily required training and credentials to work as a 911 dispatcher.

d.  Taking no corrective action or firing 911 dispatcher for poor performance and or failure to complete the statutorily required training for 911 dispatchers.

e.  Chronically understaffing 911 dispatch communications division and Aiken County EMS to a degree that violates state laws, state regulations, Aiken county ordinances, policies, procedures and the basis industry standards for County administrators, County Sheriff's Offices, 911 dispatch services and Emergency Medical Service providers.

f.  Underfunding 911 dispatch and Aiken County EMS in favor of nonessential government project despite actual knowledge of the critical understaffing of both 911 Dispatch and Aiken County EMS.

g.  Establishing a policy to refuse to rehire qualified candidates for EMS and 911 dispatch positions if the candidate was a former Aiken County EMS worker or 911dispatcher who left Aiken County to work for a competing county or private service provider.

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

122.    The above official policies or customs can be found:

a.  in certain affirmative decisions of individual policymaking officials of Aiken County, the Aiken County Sherriff's Office and Aiken EMS

b.  in certain omissions on the part of policymaking officials of Aiken County, the Aiken County Sherriff's Office and Aiken EMS that manifest deliberate indifference to the rights of citizens;

c.  in certain practices of the Aiken County, the Aiken County Sherriff's Office and Aiken EMS that are so persistent, widespread, permanent, and well-settled as to constitute "custom or usage" with the force of law; and

d.  In such other particulars as the evidence at trial will show.

123.    That the customs and or practices listed in paragraph 121 were committed and in violation of state laws, state regulations, Aiken County ordinances, Aiken County policies and procedures as well as the basis industry standards for 911 dispatchers and EMS workers, communications division supervisor for 911 dispatch, EMS supervisors, County Sheriff's Offices, EMS service providers and South Carolina county governments.

124.    The legislative and regulatory purpose of the violated statutes, regulations, ordinances and industry standard practices was the protection of the public from the actions of untrained law enforcement and emergency medical service workers.

125.    That it is foreseeable that the practices and customs listed paragraph 121 would result in a substantial increase in risk of harm to the public and would likely result in the deprivation of the rights of the Plaintiff.

126.    That the Defendants acts, omissions, policies and customs of the Defendants Aiken County, Aiken Sheriff's Office, Aiken EMS, Hunt, and Clay Killian, the Plaintiffs Frank Roberts

31

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

and Barbara Roberts were deprived of their constitutionally guaranteed rights of bodily integrity and liberty as they suffered severe emotional and bodily injury, pain and suffering and economic damages.

127.    That the proximate cause of the Plaintiff's injuries were the Malicious intentional reckless and grossly negligent acts, omissions, policies and customs of the Defendants Turner, Aiken County, Aiken Sheriff's Office, Aiken EMS, Hunt, and Clay Killian.

## FOR A SEVENTH CAUSE OF ACTION

### (Federal Claims for Gross Negligent Supervision, Retention, and Training And Claims for State Created of Danger and Failure to Intervene)

128.    That the Plaintiff's hereby incorporate paragraphs 1- 123 of the above complaint by reference including all statements and allegations of the statutory duties owed by the Defendants to the Plaintiffs.

129.    Defendants Turner, Clay Killian and Hunt are sued here in their individual and official capacities.

130.    That the Defendant's Defendants Aiken County, Aiken Sheriff's Office, Aiken EMS, Hunt, and Clay Killian, by are liable to the Plaintiffs by and through their failures to properly supervise, train, retain, fund and adequately hire qualified 911 dispatchers and EMS personnel. The Defendants multiple acts and omissions include but are not limited to the following:

32

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

h.  Failure to properly supervise Defendant Turner and Flippin reasonably and in a manner consistent with state laws, state regulations, county ordinances, policies, procedures and the basis industry standards for 911 dispatchers and EMS workers.

i.  Failure to intervene and take corrective action or fire the Defendant Turner for failure to complete the required training for 911 dispatchers.

j.  Failure to properly train Defendant Turner and Flippin reasonably and in a manner consistent with state laws, state regulations, county ordinances, policies, procedures and the basis industry standards for 911 dispatchers and EMS workers.

k.  Failure to properly manage and adequately staff the 911 dispatch communications division in a manner consistent with state laws, state regulations, Aiken county ordinances, policies, procedures and the basis industry standards for County administrators, County Sheriff's Offices, 911 dispatch services and Emergency Medical Service providers.

l.  For developing and implementing or acquiesce to the use of the policy or custom of downgrading calls with reports of cardiac arrest as reports of "chest pain" to cut down on the number of ambulance units dispatched to the scene.

m.  Failure to properly intervene to stop the policy or custom of downgrading calls with reports of cardiac arrest as reports of "chest pain" to cut down on the number of ambulance units dispatched to the scene.

n.  For developing and implementing or acquiesce to the use of the policy or custom of not sending newly hired 911 dispatchers to the statutorily required SCCJA E-911 training and allowing uncertified dispatchers to dispatch calls without the proper training.

33

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

o.  Failure to intervene and to stop the Aiken County custom of not sending newly hired 911 dispatchers to the statutorily required SCCJA E-911 training and allowing uncertified dispatchers to dispatch calls without the proper training.

p.  Failure to manage the Communications Division and the Aiken County EMS in a manner that improved retention from 2012 to 2019 and in a manner consistent with state laws, state regulations, Aiken county ordinances, policies, procedures and the basis industry standards for County administrators, County Sheriffs Offices, 911 dispatch services and Emergency Medical Service providers.

q.  Failure to increase salaries of EMS worker and 911 dispatchers in spite of the knowledge that both divisions were understaffed, and that understaffing would result in an increased risk of harm to the public.

r.  For developing and implementing or acquiesce to the use of the policy or custom of refusing to hire qualified applicants for EMS and 911 dispatch position if that same applicant recently left their job with Aiken County.

s.  Failure to hire qualified candidates due solely to a spiteful policy aimed at punishing ex-employee's for leaving positions with Aiken County and to compete with other 911 dispatch services and EMS service providers. This was done knowing that understaffing would result in an increased risk to the public.

t.  Failure to properly intervene to stop the policy or custom of not rehiring qualified candidates for EMS and 911 dispatch positions if the candidate was a former Aiken County EMS worker or 911dispatcher who left Aiken County to work for a competing county or private service provider.

34

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

> u. Failure to provide the adequate equipment for Emergency Medical Services personnel.
>
> v. Failure to hold, conduct and record Communications Center Board meetings in a manner consistent with state laws, state regulations, county ordinances, policies, procedures and the basis industry standards for County Officials and Governments.
>
> w. Failure to appoint an EMS Director.
>
> x. Failure to appoint an EMS Training Director with the proper training and credentials to train EMS staff.

131.    That the Defendant's breach of their duties to the Plaintiff were committed with knowledge that their failure to supervise, train, and proper retain and adequate number of properly trained 911 dispatchers and EMS workers would create a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiffs.

132.    That the Defendant's breach of their duties to the Plaintiff were committed with knowledge that their failure to intervene and stop the conduct of untrained 911 dispatchers and EMS workers as well as the customs and policies listed in paragraph 118, incorporated here by reference, would create a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff.

133.    That the Defendant's Aiken County, Aiken Sheriff's Office, Aiken EMS, Hunt, and Clay Killian, response to knowledge of the risk posed by their multiple acts and omissions listed paragraphs 121 and 130, incorporated here by reference, was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices:

35

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

134.    That there is an affirmative causal link between the Defendant's inaction and the
particular constitutional injury suffered by the Plaintiff's in this case.

135.    That the duties imposed on the Defendants by South Carolina state laws and
regulations were enacted to prevent the type of harm caused to the Plaintiffs.

136.    That the Defendants Aiken County, Aiken Sheriff's Office, Aiken EMS, Hunt,
and Clay Killian customs and practices made a particular subgroup of citizens
substantial more likely to suffer serious harm and deprivation a constitutional right.

137.    That the Defendants Aiken County, Aiken Sheriff's Office, Aiken EMS, Hunt,
and Clay Killian acted conscious disregard and deliberate indifference of a great risk of
serious harm to a vulnerable class of citizens.

138.    That the Plaintiffs were members of a subgroup of Aiken County citizen who
called Aiken 911 dispatch with reports of cardiac arrest or a heart attack to have their
reports of heart attack downgraded to chest pain.

139.    That that as a result of the Defendants Aiken County, Aiken Sheriff's Office,
Aiken EMS, Hunt, and Clay Killian intentional, reckless and grossly negligent acts and
omissions the Plaintiffs deprivation of their constitutional rights and suffered bodily
injury, pain and suffering and economic damages.

140.    That the proximate cause of the Plaintiff's deprivation of their constitutional
rights, injuries and damages were the intentional, malicious, willful, wanton, reckless,
negligent, negligent per se and grossly negligent acts and omissions of the Defendants
Turner, Aiken County, Aiken Sheriff's Office, Aiken EMS, Hunt, and Clay Killian

    **WHEREFORE,** Plaintiffs pray judgment against one or more Defendants, individually or
jointly, for the following:

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948

(a) Compensatory, actual, incidental and consequential damages as allowed by law for all causes of action alleged herein as shown by the evidence at the trial of this case;

(b) Damages for injuries caused by deprivation of Constitutional rights under the United States Constitution and deprivation of rights under South Carolina law;

(c) Punitive damages against each Defendant in their official and individual capacity;

(d) Reasonable attorney fees, costs and expenses of litigation under 42 U.S.C. § 1988

(e) That Plaintiffs be granted a jury to try this case; and

(f) That the Court and jury grant such other and further relief as may be just and proper.

A JURY TRIAL IS HEREBY REQUESTED.

This the 6th day of May, 2021.

s/ M. Chace Hawk
Marion Chace Hawk, SC Bar No. 102046
HAWK LAW GROUP
338 Telfair Street
Augusta, Georgia 30901
P: 706-722-3500
F: 866-295-0234

*Attorney for Plaintiffs*

37

ELECTRONICALLY FILED - 2021 May 06 9:58 PM - AIKEN - COMMON PLEAS - CASE#2021CP0200948